UNITED STATES DISTRICT COURT,
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BRIAN HARVEY, | X<br>:<br>: |
|                Plaintiff,<br>     v. | :<br>: |
|  | : |
| SERVICE EXPRESS, LLC., DAVE DOBLIN,<br>individual, and JOHN DOES 1-5 and ABC CORP.<br>1-5, | :<br>:<br>: |
|  | : |
|                Defendants. | X |

**COMPLAINT**

**REQUEST FOR JURY TRIAL**

Plaintiff, Brian Harvey (hereinafter "Plaintiff" or "Harvey") by his attorneys, Deutsch Atkins & Kleinfeldt, P.C., hereby alleges Defendants Service Express, LLC. (hereinafter "Service Express"), and Dave Doblin (hereinafter "Doblin") (jointly hereinafter referred to as "Defendants") engaged in unlawful employment discrimination as follows:

## NATURE OF THE CLAIMS

1.      This is an action for monetary damages and equitable relief to address Defendants' age discrimination against Plaintiff in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.* (hereinafter the "ADEA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq. ("NJLAD").

## PARTIES

2.      Plaintiff Harvey is an individual of approximately sixty-two (62) years of age with a primary residence at 36 Genesee Street, Hicksville, New York 11801.

3.      Plaintiff was an employee of Service Express as that term as defined in the ADEA and the NJLAD.

1

4. Service Express is a privately owned company, which provides hardware maintenance for servers, storage and network gear within corporate data centers with a principal place of business located at 39 Plymouth Street, Suite A. Fairlawn, New Jersey 07004.

5. Service Express was Plaintiff's employer as that term is defined in the ADEA and NJLAD.

6. At all times relevant to this action, Service Express maintained in excess of fifteen (15) employees.

7. At all times relevant to this action, Doblin was the Regional Sales Manager of the New York office for Service Express.

## JURISDICTION AND VENUE

8. Jurisdiction and venue are proper pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b)&(c).

9. This Court has supplemental jurisdiction over Plaintiff's NJLAD claims pursuant to 28 U.S.C. § 1367.

## PROCEDURAL HISTORY

10. Plaintiff filed a timely charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on or about April 14, 2020, Charge No. 520-2020-02812 (the "EEOC Charge"), alleging that Service Express discriminated against Plaintiff on the basis of his age in violation of the ADEA.

11. The EEOC issued a Notice of Right to Sue dated May 24, 2021. A true and accurate copy of the right to sue letter is attached hereto as **Exhibit A**.

## FACTS COMMON TO ALL COUNTS

12.      On or about March of 2017, Plaintiff began working for Service Express as a Senior Account Executive.

13.      Service Express is a third-party maintenance provider that specializes in data center maintenance for server, storage and networking equipment.

14.      Service Express acquired Delta Computer Group, a company for which Plaintiff had been working since March of 2015, as a General Manager for Administration and Sales.

15.      At the time of his hire with Service Express, Plaintiff was fifty-eight (58) years of age and had a long and successful career demonstrated by my impressive employment record spanning nearly thirty-eight (38) years.

16.      Plaintiff successfully transitioned into the position as a Senior Account Executive with Service Express and was then assigned the midtown Manhattan territory. Plaintiff was one of three former Delta employees working out of the Farmingdale, Long Island office.

17.      Rather, Service Express decided to bring in outside sales experience and hired Dave Doblin, a thirty-one (31) year old from Enterprise Car Rental, for the position of Regional Sales Manager of the New York office.

18.      Doblin subsequently hired an additional three younger men between the ages of twenty-five and thirty-five from his prior employer Delta, to work alongside Plaintiff and the two other former Delta employees.

19.      It was at this time that Plaintiff realized that Service Express was working towards building a youth-based employment culture.

20.      In December of 2018, Doblin organized a well-regarded trade show networking event named Data Center Infrastructure Professional Association ("AFCOM"). However, Doblin

3

did not invite Plaintiff. Instead, Doblin invited three (3) new younger hires to the event. Plaintiff was never offered an explanation as to why we could not participate in the event.

21.    Thereafter, the importance of having attended the trade show was proven, as it was where initial contact was made with subsequent follow-up sales activity, resulting in the largest revenue order in Service Express's history.

22.    Ironically, prior to this event, Plaintiff was recognized by Service Express for his strong work ethic and successful results in his first year of employment earning the President's Club Award for 2018.

23.    Additionally, Plaintiff achieved 144% over revenue quota for new business for the 2018 fiscal year.

24.    Also, Plaintiff had corporate goals of increased income in the years to come as he developed strategic relationships and valued the tremendous opportunity ahead of him in 2019.

25.    When Plaintiff returned to work in January of 2019, after time off for the holidays, he was informed that two of his colleagues from Delta were terminated, purportedly due to lack of performance. Plaintiff then learned that two new Account Executives were hired to start in January of 2019, both of which were young men in their late twenties.

26.    Additionally, upon Plaintiff's return, he was asked to pivot to the Long Island territory so he could be closer to his home and not have to travel into New York City. However, Plaintiff never requested such a transfer, and in fact, enjoyed his commute into New York City.

27.    This pivot from New York City to Long Island left Plaintiff with a significant decrease in account assignment opportunities.

28.    When Plaintiff questioned the decision, he was advised that he should be happy as there were younger guys to handle that territory now.

4

29.     Plaintiff was directed to focus his attention on the Long Island since it was a less stressful territory.

30.     Doblin also commented that Plaintiff was "getting up there" in years, so he should take the new assignment as a positive.

31.     Given no other alternative, Plaintiff reluctantly agreed to the change and vowed that he would again successfully transition to this new territory.  However, at this point, Plaintiff had increasing concerns about his job security, especially in light of the recent termination of his two Delta colleagues.

32.     In September 2019, the sales team relocated to Fairfield, New Jersey.  Doblin's team was transferred from the Long Island office to the Fairfield, New Jersey office

33.     Plaintiff willingly travelled to New Jersey as needed; however during that period, The Salesforce software Plaintiff used, was not yet integrated yet with the new phone system in the New Jersey office.

34.     Defendant Doblin suggested that Plaintiff remain in the Long Island office pending the completion of the Salesforce phone system integration in the New Jersey office.

35.     The new sales executive mentioned was yet another young man, in his late twenties.

36.     From the start of 2019, Plaintiff continued prospecting for new accounts, making upwards of 500 phone calls per week, as well as prospecting via targeted marketing campaigns, which included email and social media posts.  By October of 2019, Plaintiff's numbers were in the median range compared to the average on a national basis.

37.     Doblin discussed Plaintiff's prospecting numbers as being low, but also made a comment to him that he did not feel comfortable coaching him on prospecting because he thought it would be like coaching his father.

5

38. Strikingly, Plaintiff's total pipeline monthly revenues went from $54,000 in January of 2019 to $308,000 per month in October of 2019. Plaintiff's business towards the end of the third quarter of 2019 resulted in higher revenue business, which required him to allocate significantly more time into managing those larger accounts.

39. In August, September, and October of 2019, Plaintiff was recognized as the Top Sales Executive in revenue for the NYC region, Top Ten Salves Executive in the country, and Top Sales Executive in the Company for the third quarter of 2019 and achieved five hundred percent (500%) of revenue goal.

40. In lieu of those numbers and multiple accomplishments, Plaintiff was again requested to pivot to a new Enterprise Account model structure presented by senior management due to the implementation of a new company wide account assignment strategy. Plaintiff was then assigned 240 new accounts to prospect and develop.

41. In or around late October 2019, Plaintiff took three (3) vacation days. Upon his return on November 1, 2019, Plaintiff was shocked to hear from Doblin, that he was unhappy with his performance of closing out a new logo business and that his prospecting methods were a failure to date this year.

42. Doblin advised Plaintiff that he did not know what to do with him and questioned if sales was in his future. Plaintiff was confused since he had been meeting all of his quotas and received awards recognizing his outstanding performance.

43. Plaintiff was completely shaken by the conversation and asked if they were thinking of terminating him. Doblin advised him that he did not know what to do with him yet.

44. It is important to note that prior to this date, Plaintiff was never advised of any performance issues and was never placed on any Performance Improvement Plan ("PIP").

45. Plaintiff questioned Doblin as to what had gone wrong and what changed so quickly that he was being treated in this manner.

46. During the following week, Plaintiff requested to travel to New York Life Insurance in Atlanta for a meeting that took Plaintiff months to set up, with key new decision makers for this national account. However, Doblin advised him that he did not think it would be cost justifiable to send him to this meeting on November 20th.

47. This was out of the ordinary in that it has always been the Service Express's mode of operation to invest in their relationships with customers. Not attending a customer meeting of this magnitude, after multiple discussions over the last four months pertaining to this national account validated that Plaintiff's job was in jeopardy.

48. On or about November 8, 2019, Doblin called Plaintiff on his cellphone, at 5:00 p.m. on a Friday evening, to review Plaintiff's Performance Improvement Plan with him.

49. Plaintiff and Doblin went through the PIP plan, which contained untruthful statements, unrealistic goals, and expectations.

50. Doblin requested that Claimant review the PIP over the weekend and sign it on Monday. Doblin also mentioned that there was a Plan 'B' scenario, wherein Claimant would be offered a severance package if he did not sign the PIP.

51. Doblin warned Claimant that if he did sign the PIP and did not meet any of the criteria/goals, he could be terminated at any time.

52. In addition, Doblin also informed Plaintiff that if he signed the PIP, he would relinquish all of his existing accounts. These were the accounts that Plaintiff worked diligently to build solid relationships for the past nine months, as well as the new business relationships he had cultivated for the past two years.

53.    Plaintiff's accounts included: IT Center/ Altice Account ( $50k MRR) , Northwell Health, Aeropostale, New York Life, and Information Builders  who were poised to generate tremendous revenue opportunities in the 4th quarter  and beyond. These accounts would be reassigned to younger, less qualified employees.

54.    Doblin warned Plaintiff to take the severance and not consider remaining with Service Express.

55.    Plaintiff then asked Human Resources ("HR") to review the Performance Plan and severance package with him.

56.    On November 12, 2019, Plaintiff reiterated to Human Resources ("HR") that he felt as if he was being forced out of his position, through manufactured stories made by Doblin.

57.    Plaintiff advised HR that Doblin told him that he did not belong in sales, that he had taken away all of his accounts, and threatened to fire him if he did not improve.

58.    Plaintiff's complaints to HR fell on deaf years.

59.    Defendants created such a hostile work environment for Plaintiff in which no reasonable person could continue to remain employed.

60.    Defendants' above-described conduct caused Plaintiff's constructive discharge.

61.    Thus, without dispute, Defendants constructively discharged Plaintiff's employment on or about November 12, 2019.

62.    While it was indicated that his termination was due to poor performance, his termination from Service Express was clearly age-related and in violation of federal laws; namely the ADEA, and the NJLAD.

63.    Based on information and belief, Service Express replaced Plaintiff with someone who is younger, less qualified, and less experienced.

8

## COUNT ONE
### (Age Discrimination in Violation of the ADEA and NJLAD)

64. Plaintiff repeats and re-alleges Paragraphs 1 through 62 of the Complaint as if fully set forth herein.

65. Plaintiff was over forty (40) years of age at the time of the discriminatory conduct.

66. Plaintiff performed the duties and responsibilities of his position in at least a satisfactory manner.

67. In many instances, Service Express recognized Plaintiff for his exemplary performance.

68. Plaintiff suffered an adverse employment action when he was constructively discharged by Defendants due to his age.

69. Defendants replaced Plaintiff with a younger, less qualified, and less experienced individual.

70. By and through the actions described herein, Defendants discriminated against Plaintiff on the basis of his age in violation of the ADEA and NJLAD.

71. A determinative and/or motivating factor for Defendants' decision to terminate Plaintiff's employment was Plaintiff's age.

72. As a result of the Defendants' discrimination against Plaintiff on account of his age, Plaintiff has suffered, and will continue to suffer, economic losses, including but not limited to salary, bonus, and other employment benefits.

73. As a result of Defendants' discrimination against Plaintiff on account of his age, Plaintiff has suffered, and will continue to suffer emotional and psychological harm, stress, humiliation, mental anguish, damage to reputation and harm to his career.

9

74.    The conduct set forth herein involved Service Express's upper management and was egregious, willful, wanton, and in reckless disregard for Plaintiff's rights for which punitive damages are appropriate.

**WHEREFORE** Plaintiff demands judgment against Service Express and seeks the following relief:

(a)    Compensatory damages for loss of wages (back pay and front pay) and other lost employment benefits;

(b)    Compensatory damages for emotional distress, including but not limited to psychological harm, stress, humiliation, mental anguish, damage to reputation and harm to his career;

(c)    Punitive damages;

(d)    Attorneys' fees, pre- and post-judgment interest, and costs of suit; and

(e)    Such other relief as this Court may deem just and appropriate.

## COUNT TWO
### (Aiding and Abetting Discrimination in Violation of the NJLAD)

75.    Plaintiff repeats and re-alleges Paragraphs 1 through 73 of the Complaint as if fully set forth herein.

76.    Including but not limited to the conduct described herein, Doblin, aided and abetted discrimination in violation of the NJLAD.

77.    As a result of Doblin's aiding and abetting discrimination in violation of the NJLAD, Plaintiff has suffered and will continue to suffer economic losses, including but not limited to salary, bonuses and other employment benefits.

78.    As a result of the Doblin's aiding and abetting discrimination in violation of the NJLAD, Plaintiff has suffered, and will continue to suffer emotional and psychological harm, stress, humiliation, mental anguish, damage to reputation and harm to his career.

10

79.     The conduct set forth herein involved Service Express's upper management, including but not limited to Doblin, and was egregious, willful, wanton, and in reckless disregard for Plaintiff's rights for which punitive damages are appropriate.

**WHEREFORE** Plaintiff demands judgment against Dave Doblin and seeks the following relief:

(a)     Compensatory damages for loss of wages (back pay and front pay) and other lost employment benefits;

(b)     Compensatory damages for emotional distress, including but not limited to psychological harm, stress, humiliation, mental anguish, damage to reputation and harm to his career;

(c)     Punitive damages;

(d)     Attorneys' fees, pre- and post-judgment interest, and costs of suit; and

(e)     Such other relief as this Court may deem just and appropriate.

**DEUTSCH ATKINS & KLEINFELDT, P.C.**
*Attorneys for Plaintiff, Brian Harvey*
21 Main Street, Suite 352
Court Plaza South
Hackensack, New Jersey 07601
Telephone: (201) 498-0900

By: ___/s/ *Bruce L. Atkins*
BRUCE L. ATKINS

Dated: August 17, 2021

11

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

**DEUTSCH ATKINS & KLEINFELDT, P.C.**
*Attorneys for Plaintiff, Brian Harvey*
21 Main Street, Suite 352
Court Plaza South
Hackensack, New Jersey 07601
Telephone: (201) 498-0900
Facsimile: (201) 498-0909


By:    /s/ *Bruce L. Atkins*
       BRUCE L. ATKINS

Dated: August 17, 2021


## DESIGNATION OF TRIAL COUNSEL

Plaintiff hereby designates Bruce L. Atkins, Esq. as trial counsel.

**DEUTSCH ATKINS & KLEINFELDT, P.C.**
*Attorneys for Plaintiff, Brian Harvey*
21 Main Street, Suite 352
Court Plaza South
Hackensack, New Jersey 07601
Telephone: (201) 498-0900
Facsimile: (201) 498-0909


By:    /s/ *Bruce L. Atkins*

BRUCE L. ATKINS

Dated: August 17, 2021

12

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

It is hereby certified that as of the date hereof, the matter in controversy is not the subject of any other litigation, arbitration, or administrative proceeding currently pending in any court or before any other body.

**DEUTSCH ATKINS & KLEINFELDT, P.C.**
*Attorneys for Plaintiff, Brian Harvey*
21 Main Street, Suite 352
Court Plaza South
Hackensack, New Jersey 07601
Telephone:  (201) 498-0900
Facsimile:  (201) 498-0909


By: ___ /s/ *Bruce L. Atkins*
       BRUCE L. ATKINS

Dated: August 17, 2021

13

# EXHIBIT A

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To: **Brian W. Harvey**
**36 Genesee Street**
**Hicksville, NY 11801**

From: **New York District Office**
**33 Whitehall Street**
**5th Floor**
**New York, NY 10004**

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2020-02812** | **Christiana R. Doriety, Investigator** | **(917) 410-4022** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

**VANESSA GUEST** Digitally signed by VANESSA GUEST Date: 2021.05.24 Judy A. Keenan 04'00'    FOR    5-24-2021

Enclosures(s)

**District Director**    *(Date Issued)*

cc:
**Gretchen Murphy**
**Chief Human Resources Officer**
**C/O SERVICE EXPRESS**
**3854 Broadmoor Ave SE**
**Grand Rapids, MI 49512**

**Diane Englander-Peyser**
**DEUTSCH ATKINS P.C.**
**25 Main St.**
**Court Plaza North**
**Hackensack, NJ 07601**

Enclosure with EEOC
Form 161 (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *issued* **to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Enclosures(s)

cc: